JAMES WHITAKER ET AL *v.* WILLIAM HOPKINS' ADMR.

**Lien—Vendor and Purchaser—Waiver by Negligence.**

A delay of over thirteen years in a suit without making an order or taking any step in the cause indicating an intention to prosecute the suit, held to be gross negligence, as against a purchaser in good faith, and for a valuable consideration.

APPEAL FROM KENTON CIRCUIT COURT.

June 1, 1870.

OPINION OF THE COURT BY JUDGE PETERS:

This action was instituted on the 11th of September, 1850, by William Hopkins, to enforce his lien as vendor on lot 196 in the city of Covington, for two installments of $200 each, one due on the 19th of June, 1849, and the other on the 19th of June, 1850, against Ferdinand Walters and James Whitaker.

On the 19th of June, 1848, the day on which the sale was made, Hopkins and wife conveyed the lot to Walters for the recited consideration of eight hundred dollars *well and truly paid,* the receipt of which is acknowledged in the deed.

It is inferrable from facts appearing in the record that Whitaker had purchased the property from Walters between the date of his purchase from Hopkins and the filing the bill, but the principal allegation of the bill against Whitaker the clerk states is so mutilated that it is unintelligible and is not copied in the record.

Walters answered the bill, admitting his indebtedness as therein alleged, but says that he executed a mortgage on said lot to Hopkins, to secure the unpaid purchase money at the same time the deed was made to him, and as it was known that Hopkins had title to only one-half the property conveyed, it was a part of the contract, and so expressed in the mortgage, that the unpaid price was not to be collected until Hopkins perfected his title, which he has never done, and that the half of the lot has been recovered by Gano's heirs under superior title, and he is only responsible in consequence thereof for one-half of the original contract price

of the lot, which was $800, and makes his answer a cross-bill against Hopkins.

Walters filed what he represents as the original mortgage from himself to Hopkins, to secure the purchase money, containing the stipulation as stated in his answer, which from the clerk's certificate attached, appears to have been acknowledged by him on the 19th of June, 1848, and the clerk then states in his certificate that it was again on the 2nd of October, 1850, presented to him for record and this was after the institution of this suit.

In 1851, Hopkins appears to have filed an answer to Walters' cross-petition, in which he denied that Walters ever, with his consent, executed said mortgage, or that he ever consented to, or accepted it as an indemnity for his purchase money; but he avers that, on the contrary, he repudiated the thing as an attempted fraud on the part of Walters to bind him to suspend the collection of his money indemnity. And charges that one Harry Albro came to him and expressed a desire to purchase, when he informed Albro that the southeast quarter of said lot he had a clear title regularly derived from the trustees of said town; but that his title to the northeast quarter was doubtful, as he held it under a tax claim, and the trade was, in fact, made with Albro, who insisted that he should convey the northeast quarter, although he was well informed as to the condition of the title; and it was agreed that if he, Hopkins, could procure the title from Gano's heirs, who held it, he would convey it and he was in that event to be paid for the whole, but if not he was only to be paid for the southeast quarter its value, which was greater than the northeast quarter, as it ran to an alley. He says that having failed to get a title for the northeast quarter, he does not ask pay therefor and surrenders all claim to it, but insists that he should have $500 for the southeast quarter, and charges that it was fraud on the part of Walters and Albro to attempt to execute said mortgage with the stipulation that no more money was to be paid until the title to the northeast quarter was obtained and have the same recorded.

In August, 1851, the death of complainant was suggested, and the suit was revived in the name of James Hopkins, his administrator.

On the 12th of March, 1853, Whitaker filed his answer, in which he declares he has no desire to prolong the suit, but wishes the same to be terminated, and consents that the court shall

dispose of the same at that term, viz., March, 1853; says he is in possession of the property, having purchased it, and submits to the court whether he shall have the northeast quarter or not; but does not allege that he had paid all the purchase money.

From the filing of the answer of Whitaker in March, 1853, till July, 1866, not an order appears to have been made, not even for a continuance nor one step taken in the case. At the last named date, the record shows that an amended bill and bill of review were filed by complainant, in which the death of James Whitaker is alleged, and his personal representative, and devisees, made defendants, and by an amendment to the bill Mrs. Martha McGrieve is made a defendant, she having purchased the southeast quarter of the lot, and a sale of the same is asked to pay the debt.

From the record of an action of ejectment, it appears that Gano's heirs derived the northeast quarter of the lot from Whitaker or his tenant, that it was subsequently sold under a decree of the Kenton circuit court on the petition of said heirs. At said sale Longmore purchased and subsequently transferred the benefit thereof to Mrs. McGrieve for a valuable consideration and by an order of said court the same was conveyed by its master to Mrs. McGrieve. That Whitaker had obtained a deed from Walters for a valuable consideration, who, for a valuable consideration sold and conveyed the same to Longmoore, and he to Mrs. McGuire, these deeds contain covenants of general warranty.

Subsequent pleadings appear in the cause, but it is deemed unnecessary to make any reference to them.

January 9th, 1869, final judgment was rendered in favor of Hopkins against Walters for $300, with interest from the 19th of June, 1848, till paid and costs, and that Hopkins has a vendor's lien on the southeast quarter of lot 198 and the same is ordered to be sold to raise the money adjudged to him. And from that judgment Whitaker appeals, and as the record shows Mrs. McGuire has prayed a cross-appeal to Whitaker's appeal.

It is very clear that Hopkins has not retained a lien on the lot in his deed to Walters for the unpaid price, under the R. S., nor has he done so as to subsequent purchases according to the law as it was before the adoption of the *Revised Statutes.* And he repudiates the mortgage set up by Walters, so that if the judgment

is sustained for the enforcement of the alleged lien it must be on the ground that there was a *lis pendens* when Mrs. McGuire acquired title. Whitaker conveyed the property to Longmoore in 1855, and on September 1, 1857, Longmoore conveyed the same to Mrs. McGuire. No actual notice of the existence of appellee's claim for the unpaid price, or the pendency of Hopkins' suit was alleged or proved as to Longmoore and McGuire.

If, therefore, appellee has been guilty of culpable negligence in the prosecution of his suit, a court of equity cannot grant him relief against these *bona fide* purchasers.

It must appear palpable that a delay of over 13 years without making an order, or motion, or taking a step in the case indicating an intention to prosecute the suit, without an excuse offered for the delay, or an explanation given, is negligence too gross and culpable to entitle him to relief against the vendee of the lot for a valuable consideration. See *Petree & Bristow et al v. Bell, 2 Bush., 58,* and authorities cited.

Whitaker being a vendor with warranty had an interest in the case and could properly prosecute an appeal, as the judgment was prejudicial. But as Mrs. McGuire was not an appellee she could not prosecute a cross-appeal, and it was allowed without understanding how the parties stood in this court.

So much of the judgment, therefore, as subjects the lot to the payment of Hopkins' debt is reversed and the cause remanded, with directions to dismiss the suit as to Longmoore and McGuire. The liabilities of Whitaker's estate and the state of indebtedness between Albro's representative and Whitaker and Walters are questions not determined in the court below, and this court cannot properly express any opinion.

*Benton, for appellants.*